IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

TRACY S. MILLER                                          PLAINTIFF/COUNTER-DEFENDANT

VS.                                                      CIVIL ACTION NO.  2:05CV2144KS-MTP

UNION PLANTERS BANK, N.A. AND/OR
REGIONS BANK, F.K.A. UNION
PLANTERS BANK, N.A.                                      DEFENDANT/COUNTERCLAIMANT

***

REGIONS BANK                                             THIRD-PARTY PLAINTIFF

VS.

VICTORIA MILLER AND
MILLER POULTRY SERVICE, INC.                             THIRD-PARTY DEFENDANTS

## MEMORANDUM OPINION

This matter is before the court following the filing by Regions Bank ("Regions")[1] of a motion for partial summary judgment on September 19, 2006, seeking the dismissal of plaintiff Tracy S. Miller's complaint.  From its review of all matters made a part of the record of this case as well as applicable law, and being thus fully advised in the premises, the court FINDS that the motion should be granted in part and denied in part.  The court specifically finds as follows:

FACTUAL BACKGROUND

In 2004 and early 2005, plaintiff Tracy Miller ("Mr. Miller") was a co-owner of a deposit

---

[1] Regions Bank is the surviving entity in the merger between Regions Bank and Union Planters Bank.  Union Planters bank no longer exists as a separate entity.  Therefore, "Regions" encompasses both Regions Bank and Union Planters Bank.

1

account, account number 9001057535 (the "Subject Account") with Regions.  Mr. Miller's family business, third-party defendant Miller Poultry Service, Inc. ("Miller Poultry") was the other co-owner.  Mr. Miller and/or Miller Poultry also had two other accounts with Regions, account numbers 900943558 and 9000942411.  On both of these other accounts, Mr. Miller's estranged wife and third-party defendant Victoria Miller was an authorized signatory and was listed on the signature cards as Secretary and Chief Financial Officer of Miller Poultry.  Mrs. Miller was not listed as a signatory on the Subject Account, and according to Mr. Miller was never authorized to make withdrawals or transfers out of the Subject Account.

   During the relevant time period, Mr. Miller allowed Mrs. Miller to write almost all checks out of the Subject Account and to sign his name to those checks, Mrs. Miller frequently signed checks under her own name on the Subject Account (without Mr. Miller questioning these transactions), Mrs. Miller made transfers and/or withdrawals out of the Subject Account prior to August 2004 and Mr. Miller did not question those transactions, Mr. Miller authorized Mrs. Miller to make deposits into the Subject Account and authorized her to balance the checkbook, Mrs. Miller handled all the banking on the Subject Account up to the time she and Mr. Miller separated in March 2005, and if there were ever any problems with the Subject Account, Mrs. Miller would handle those problems with Regions.

   From August 9, 2004 through February 7, 2005, Mr. Miller's spouse, Victoria Miller ("Mrs. Miller"), authorized Regions to make twenty-seven (27) transfers of funds out of the Subject Account, totaling $22,800.00.  These transfers were initiated through personal contact with Regions' employees, either over the phone in person or through the mail.  Of these twenty-seven transfers, only three were cash withdrawals, totaling $1,650.00.  The remaining twenty-

four transfers, totaling $21,150.00 were deposited into one of the other two accounts owned by Mr. Miller or Miller Poultry.  Plaintiff swore an Affidavit of Forgery with Regions on April 13, 2005, and defendant's attorney sent a demand letter to Regions on April 28, 2005, requesting that the funds be returned to plaintiff's account.  That demand was refused by Regions.

On September 15, 2006 Mr. Miller filed an Amended Complaint against Regions seeking $10,000,000.00 in actual damages and $10,000,000.00 in punitive damages.  Mr. Miller asserts causes of action against Regions for negligence, breach of contract, breach of fiduciary duty, conversion, gross negligence, and negligent supervision.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is to be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrates the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Williams v. Adams*, 836 F.2d 958, 960 (5th Cir. 1988).  The moving party, however, need not negate the elements of the non-movant's case.  *See Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) *(citing Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

Once the moving party satisfies its initial burden, the non-movant may not rest on the pleadings, but must "identify specific evidence in the ... record demonstrating that there is a

material fact issue concerning the essential elements of its case." *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (citation omitted); *see also Celotex*, 477 U.S. at 322-23; *Anderson*, 477 U.S. at 257. "The moving party need not support its motion with affidavits or other evidence, but to defeat a motion for summary judgment the nonmovant must present evidence sufficient to establish the existence of each element of his claim as to which he will have the burden of proof at trial." *Pavone v. Mississippi Riverboat Amusement Corp.*, 52 F.3d 560, 565 (5th Cir. 1995) (citation omitted).

In analyzing a motion for summary judgment, all evidence must be "construed in the light most favorable to the nonmoving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996) (citation omitted). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in her favor." *Palmer v. BRG, Inc.*, 498 U.S. 46, 49 n.5 (1990) (*quoting Anderson*, 477 U.S. at 255). Nevertheless, "conclusory allegations, speculation and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Douglass*, 79 F.3d at 1429 (citation omitted). Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to her case on which she bears the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "In such situations, there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23.

## ANALYSIS

Defendant argues that the Uniform Commercial Code ("UCC") trumps Mr. Miller's

common law claims and limits his recovery to restitution. Miss. Code Ann. § 75-4A-102 provides that "this chapter applies to fund transfers defined in Section 75-4A-104." A "funds transfer" is defined as "the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order." Miss. Code Ann. § 75-4A-104(a). "Payment order" is defined as "an instruction of a sender to a receiving bank, transmitted orally, electronically, or in writing, to pay, or to cause another bank to pay, a fixed or determinable amount of money to a beneficiary...". Miss. Code Ann. § 75-4A-103(a)(1).

It is clear that the twenty-four transfers at issue in this case are "fund transfers" within the meaning of the UCC.[2] Where an unauthorized funds transfer is made or accepted by a bank, Article 4A provides that the bank "shall refund any payment of the payment order received from the customer to the extent the bank is not entitled to enforce payment and shall pay interest on the refundable amount calculated from the date the bank received payment to the date of the refund." Miss. Code Ann. §75-4A-204(a). This section does not provide that it shall be the exclusive remedy for unauthorized funds transfers. Defendant, however, relies on the decision of the Mississippi Court of Appeals in *Hancock Bank v. Ensanat*, 819 So. 2d 3 (2002) as support for its argument. There, the court held that plaintiff's common law claims against a bank based on checks that had been fraudulently endorsed and deposited into the forger's account with the bank were subsumed by the UCC, and therefore plaintiff's only claims against the bank were those provided by Article 3 (governing negotiable instruments) - specifically, the section dealing with conversion of negotiable instruments. *Id.* at 8. The *Ensanat* court opined that application of the

---

[2] The three cash withdrawals at issue in this case are not "funds transfers" and therefore Article 4A of the UCC does not apply to them.

UCC was not optional and that the UCC "controls" specific transactions and issues. *Id.* Indeed, the court stated that once the checks were endorsed and delivered to the bank, plaintiff "entered the world of the Uniform Commercial Code." *Id.*

Plaintiff argues that *Ensanat* does not apply because "funds transfers" are different from "negotiable instruments"and Mississippi courts have not yet ruled on whether UCC Article 4A provides the exclusive remedy for unauthorized funds transfers.  The court agrees with plaintiff that the "funds transfer" provision at issue in this case is different from the negotiable instrument provision at issue in the *Ensanat* case.  In *Ensanat*, the court was applying UCC § 75-3-420, which provides that recovery for conversion of a negotiable instrument "may not exceed the amount of the plaintiff's interest in the instrument."  Here, there is no such limiting language in the funds transfer provision, which simply states that the bank "shall" refund the unauthorized payment and does not provide that refund is plaintiff's only remedy.  Independent research by this court confirms that the Mississippi courts have not ruled on whether Article 4A preempts state law claims.  A survey of other jurisdictions shows that in general, courts do not read Article 4A as automatically preempting state law claims.  *See*, *e.g.*, *Regions Bank v. The Provident Bank, Inc.*, 345 F.3d 1267, 1274-75 (11th Cir. 2003) ("Article 4A [of the UCC] is not the 'exclusive means by which a plaintiff can seek to redress an alleged harm arising from a funds transfer'…'The Article itself is replete with references to common law remedies." (citations omitted); *Regions Bank v. Wieder & Mastroianni*, 423 F.Supp. 2d 265, 269 (S.D.N.Y. 2006) ("Nowhere does Article 4A [of the UCC] expressly or impliedly preclude common law claims for conversion...The same holds true for the breach of fiduciary duty claim.") (internal citation omitted).  Indeed, the Official Comment to Article 4A provides that its rules are "intended to be

the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article.  Consequently, resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities *inconsistent* with those stated in the Article" (emphasis added).

The court finds that Mr. Miller's common law claims are not inconsistent with the rights, duties and liabilities set forth in Article 4A because Article 4A does not expressly prohibit the remedies Mr. Miller is seeking.  And Miss. Code Ann. § 75-1-103 provides: *"Unless displaced by the particular provisions of this code*, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions" (emphasis added).   Therefore, summary judgment for defendant on this issue is denied.

The court does, however, agree with defendant that Mr. Miller is not entitled to recover any punitive damages.  The UCC specifically provides that "neither consequential or special nor penal damages may be had except as specifically provided in this code or by other rule of law." Miss. Code Ann. § 75-1-106(1).  The UCC does not elsewhere provide for punitive damages for unauthorized funds transfers.  Moreover, Mississippi's statute governing punitive damages, Miss. Code An. § 11-1-65(1)(a), only allows for punitive damages where a plaintiff shows by clear and convincing evidence actual malice, gross negligence evidencing a willful, wanton or reckless disregard for the safety of others, or the commission of actual fraud.  *Wise v. The Valley Bank*, 861 So. 2d 1029, 1034 (Miss. 2003).  Punitive damages are allowed by Mississippi courts only "where the fact are highly unusual and the cases extreme." *Id.*  (citations omitted).  Even

assuming that the transactions at issue in this case were unauthorized, it is clear that Regions had some basis for assuming that they were authorized.  There is simply no basis for plaintiff to seek punitive damages and therefore summary judgment for defendant on this issue is proper.

Regions also argues that it is entitled to summary judgment on Mr. Miller's claims because Mrs. Miller had apparent authority and/or Mr. Miller ratified the transactions at issue. Section 75-4A-202(a) of the Mississippi Code Annotated provides: "A payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency."

An agency relationship can be established through either actual or apparent authority. *Certain Underwriters at Lloyd's of London v. Pettey*, 770 So. 2d 39, 45 (Miss. 2000).  "If an agent acted within his apparent authority, the issue of actual authority need not be reached." *Id.* (*quoting Andrew Jackson Life Ins. Co. v. Williams*, 566 So. 2d 1172, 1180 (Miss. 1990)) (emphasis added).  "Apparent authority exists when a reasonably prudent person, having knowledge of the nature and the usages of the business involved, would be justified in supposing, based on the character of the duties entrusted to the agent, that the agent has the power he is assumed to have." *Eaton v. Porter*, 645 So. 2d 1323, 1325 (Miss. 1994) (*quoting Ford v. Lamar Life Ins. Co.*, 513 So. 2d 880, 888 (Miss. 1987)).  A three-pronged test is utilized to determine whether an agent has apparent authority to bind a principal: 1) acts or conduct by the principal indicating the agent's authority; 2) reasonable reliance by a third party upon those acts or conduct; and 3) detrimental change in position by the third party as a result of such reliance. *Id.*

The question of whether the evidence establishes apparent authority is ordinarily a question of fact for the fact finder. *Hutton v. Am. Gen'l Life & Accident Ins. Co.*, 909 So. 2d 87,

94 (Miss. App. 2005), *reh'g denied en banc*, 2005 Miss. App. LEXIS 569 (Aug. 16 , 2005) (citation omitted); *Ciba-Geigy Corp. v. Murphree*, 653 So. 2d 857, 872 (Miss. 1994); *Eaton v. Porter*, 645 So. 2d 1323, 1325 (Miss. 1994).  Based on the facts set forth earlier, the court finds that there is a genuine issue of material fact in the record as to whether Mrs. Miller had apparent authority to make the fund transfers in question.  Accordingly, the court denies summary judgment for defendant on the basis of apparent authority.

Ratification is "the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him." *Autry v. State*, 698 So. 2d 84, 87 (Miss. 1997) (*quoting Carter v. Hurst*, 234 So. 2d 616, 620 (Miss. 1970)).  Put differently, "[t]he subsequent acts of the principal may be equivalent to prior consent to the delegations of authority." *Id.* (*quoting* 3 *Corpus Juris Secondum* § 234). Ratification by the principal can be accomplished through affirmative actions, *Forest Oil Corp. v. Tenneco, Inc.*, 626 F.Supp. 917, 923 (S.D. Miss. 1986), or through inaction.  *Autry*, 698 So. 2d at 87.  In addition, a principal may not willfully ignore the facts of the transactions at issue and thereby avoid a ratification argument.  *Gulf Refining Co. v. Travis*, 30 So. 2d 398, 400 (Miss. 1947).  However, ratification must be based on full, actual knowledge of the facts of the transaction.  Constructive or imputed knowledge is not enough.  *NMS Indus., Inc. v. Premium Corp.*, 451 F.2d 542, 544-45 (5th Cir. 1971).

The court finds that there is a genuine issue of material fact as to whether the fund transfers at issue were ratified by Mr. Miller.  Although the transfers at issue were indicated on the Mr. Miller's various account statements, Mr. Miller contends that he did not receive all of the pertinent bank statements because apparently Mrs. Miller changed the address to where they were

9

sent. In addition, whether or not Mr. Miller's failure to complain to Regions until March or April 2005 constituted ratification of the transfers is a question of fact for the jury.[3] Accordingly, the court denies summary judgment for defendant on this basis.

Defendant has also moved for summary judgment on plaintiff's common law claims for breach of fiduciary duty, conversion and negligent supervision.

Breach of Fiduciary Duty

The Mississippi Supreme Court has stated that "'ordinarily a bank does not owe a fiduciary duty to its debtors and obligors under the UCC.'" *Berhow v. People's Bank*, 423 F.Supp. 2d 562, 570 (S.D. Miss. 2006) (*quoting People's Bank & Trust Co. v. Cermack*, 658 So. 2d 1352, 1358 (Miss. 1995)); *see also Wise v. Valley Bank*, 861 So. 2d 1029, 1033 ("The relationship between a bank and its depositor is simply one of debtor and creditor...[and] is generally not a fiduciary one."). In this case, there is simply no evidence that the relationship between Mr. Miller and Regions was anything more than that of an ordinary debtor and creditor. Accordingly, defendant's motion for summary judgment on plaintiff's claim for breach of fiduciary duty is granted.

Conversion

In order to state a claim for conversion, plaintiff must show that Regions had an "intent to exercise dominion or control over goods which [was] inconsistent with [Mr. Miller's] right." *Wilson v. Gen'l Motors Acceptance Corp.*, 883 So. 2d 56, 69 (Miss. 2004) (citation omitted). Regions argues that it never exercised dominion or control over Mr. Miller's funds because the

---

[3] Indeed, Mr. Miller contended in his deposition that he made a verbal complaint to Regions about certain of the allegedly unauthorized transactions prior to March or April 2005.

funds were transferred to other accounts owned by Mr. Miller and Miller Poultry, or were transferred in cash to Victoria Miller. However, a bank can be liable for conversion where it wrongfully transfers a customer's money or cashes a check. *See*, *e.g.*, *50-Off Stores, Inc. v. Banques Paribas (Suisse) N.A.*, 180 F.3d 247, 254 n.9 (5th Cir. 1999) (citing cases). Therefore, the court denies summary judgment for Regions on this claim.

Negligent Supervision

In order to make a claim for negligent supervision, Mr. Miller must establish the same elements as a regular negligence claim: duty, breach, proximate cause and damages. *Warren v. Glascoe*, 852 So. 2d 634, 639 (Miss. 2003) (citation omitted). Regions argues that Mr. Miller has not pled, nor are there facts in the record to support, the level of supervision Regions exercised over the employees involved in the subject transactions, who these employees' supervisors were, whether or not they were being supervised at the time of the transfers and if so, to what degree, or any policies or procedures at Regions regarding supervision of employees. In response to the motion, plaintiff has not pointed to any such evidence in the record. Rather, plaintiff's only response is that discovery is "ongoing" as to this issue, and that plaintiff plans to depose certain managers at the bank branch where the subject transactions took place. The court is quite puzzled by this response. The discovery deadline in this case was September 1, 2006, and trial is scheduled to begin in less than two weeks, on December 4, 2006. No request has been made by the plaintiff to conduct additional discovery. The court finds that based on the complete absence of any evidence in the record to support this claim, summary judgment for defendant is warranted.

Finally, Regions contends that plaintiff admitted that twenty-four of the transfers at issue,

that were deposited into Mr. Miller's other two accounts, were used for legitimate family or business purposes and therefore he has not suffered any damages.  However, in his deposition plaintiff said that he assumed that was the case, not that he knew that was the case, and elsewhere plaintiff questioned certain of the transfers.  Plaintiff contends that Mrs. Miller enjoyed complete access to the two accounts into which the funds at issue were deposited, and that Mrs. Miller may have used some of the money for her personal use.  The court therefore finds there is a genuine issue of material fact as to whether or not plaintiff sustained any damages resulting from these twenty-four allegedly unauthorized transfers, and therefore summary judgment for defendant is denied on this issue.

IT IS, THEREFORE, ORDERED AND ADJUDGED that Regions' motion for partial summary judgment [**# 30**] is granted in part and denied in part.  Summary judgment for defendant on plaintiff's claims for breach of fiduciary duty and negligent supervision is granted and these claims are dismissed with prejudice.  Summary judgment for defendant on plaintiff's claim for conversion is denied.  Plaintiff's claims for negligence, breach of contract, conversion and gross negligence are not subsumed by the UCC and therefore they remain in this action.  Plaintiff is not entitled to recover punitive damages on any of his claims.

SO ORDERED and ADJUDGED on this, the 22nd day of November, 2006.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE